UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEFENDERS OF WILDLIFE, *et al.*,

        Plaintiffs,

        v.

SALLY JEWEL, *in her official capacity as Secretary of the United States Department of the Interior, et al.*,

        Defendants,

  and

OKLAHOMA INDEPENDENT
PETROLEUM ASSOCIATION, *et al.*,

        Defendant-Intervenors.

Civil Action No. 14-1025 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Three conservation organizations have brought suit against the United States Fish and Wildlife Service ("FWS") and two government officials (collectively, the "Federal Defendants") over two regulatory decisions relating to the "lesser prairie-chicken" (collectively, the "Challenged Rules").[1] *See* Compl. ¶ 1. This case is one of five similar legal challenges filed in both Oklahoma and Texas. The Oklahoma Independent Petroleum Association, along with others, intervened in this action and asked this Court to transfer the case to the Northern District of Oklahoma, where the first of these cases was filed and other similar legal challenges are currently pending. *See* Mot. Transfer Venue, ECF No. 12. For the reasons stated below, the

---

[1] The plaintiffs consist of the Defenders of Wildlife, the Center for Biological Diversity, and the WildEarth Guardians. The Federal Defendants consist of Sally Jewell, Secretary, U.S. Department of Interior, Daniel Ashe, Director, U.S. Fish and Wildlife Services, and the U.S. Fish and Wildlife Services.

1

Court concludes that the transfer of this case to the Northern District of Oklahoma best serves the interests of justice and is warranted under 28 U.S.C. § 1404(a).

I.      BACKGROUND

The lesser prairie-chicken "is a species of prairie grouse endemic to the southern high plains of the United States." 79 Fed. Reg. 19,974, 19,998 (April 10, 2014). The lesser prairie-chicken inhabits shortgrass prairies, sand sage grasslands, and shinnery oak shrubsteppe across Oklahoma, eastern New Mexico, the Texas panhandle, Kansas, and southeastern Colorado. *See Id.* at 20,009. In 2010, the WildEarth Guardians—a plaintiff in this action—brought suit against the FWS seeking a listing decision regarding the lesser prairie-chicken, among many other species. *See In re Endangered Species Act Section 4 Deadline Litig.*, No. 10-mc-377, MDL Docket No. 2165 (D.D.C.). The action was consolidated with several other cases seeking listing decisions for additional species. *See In re Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369 (J.P.M.D.L. 2010). Ultimately, the parties entered into a consent decree, which required the FWS to make listing decisions with respect to hundreds of species— including the lesser prairie-chicken—by specific dates. *See In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1, 6–7 (D.D.C. 2011).

In 2014, the FWS issued a final rule listing the lesser prairie-chicken as "threatened" under the Endangered Species Act ("ESA"). *See* 79 Fed. Reg. 19,974 (April 10, 2014) ("Listing Decision"). The FWS also issued a second rule modifying the standard protections available for the lesser prairie-chicken as a "threatened" species. *See* 79 Fed. Reg. 20074 (April 10, 2014) ("Conditions Decision."). All of the "comments and materials received, as well as supporting documentation" concerning the Challenged Rules is available for public inspection at the FWS Oklahoma Ecological Services Field Office ("FWS Field Office") in Tulsa, Oklahoma. *See* 79

Fed. Reg. 19,974; 79 Fed. Reg. 20074. An individual or party seeking additional information regarding the Challenged Rules are directed to contact the Field Supervisor for the FWS Field Office, once again, in Tulsa, Oklahoma. *See* 79 Fed. Reg. 19,974; 79 Fed. Reg. 20074. For both of the Challenged Rules, "the primary authors [were] the staff members of the Oklahoma Ecological Services Field Office." *See* 79 Fed. Reg. 19,974, 20,070; 79 Fed. Reg. 20074, 20,084. The Challenged Rules were signed in Washington D.C.

Following the Listing Decision, multiple parties brought suit. At present, five separate suits spanning three separate venues are pending to challenge one or both of the Challenged Rules. This is the fourth-filed action and the only action filed in Washington D.C. As summarized below, each of the pending actions challenges the Listing Decision, while two pending actions also challenge the consent decree and the instant action also challenges the Conditions Decision.

| Case | Venue | Date Filed | Legal Challenges |
|---|---|---|---|
| *Oklahoma, et al. v. Dep't of Interior, et al.*, No. 14-cv-123 (JHP) | N.D. Okla. | Mar. 17, 2014 (Amended July 14, 2014) | Listing Decision<br><br>Consent Decree |
| *OIPA, et al. v. Dep't of Interior, et al.* No. 14-cv-307 (JHP) | N.D. Okla. | June 8, 2014 | Listing Decision |
| *Permian Basin Petroleum Ass'n, et al. v. Dep't of Interior, et al.*, No. 14-cv-0050 (RAJ) | W.D. Tex. | June 9, 2014 | Listing Decision |
| *Defenders of Wildlife, et al. v. Jewell, et al.*, No. 14-cv-1025 (BAH) | D.D.C. | June 17, 2014 | Listing Decision<br><br>Conditions Decision |
| *Hutchison, et al. v. Dep't of Interior, et al.*, No. 14-cv-0509 (JHP) | N.D. Okla. | August 27, 2014 (Amended Nov. 11, 2014) | Listing Decision<br><br>Consent Decree |

In each pending case, the parties have hotly contested the issue of venue. The present case is no different.

On September 30, 2014, this Court permitted the Oklahoma Independent Petroleum Association of America, and five others, to intervene on behalf of the defendants in the present case.[2] *See* Minute Order (Sept. 30, 2014). The defendant-intervenors filed a motion to transfer venue to the Northern District of Oklahoma. Meanwhile, in Oklahoma and Texas, the Federal Defendants filed motions seeking to transfer venue here. Only one motion has thus far been decided. In *Oklahoma v. Dep't of Interior*, the court rejected the Federal Defendants' attempt to transfer venue pursuant to 28 U.S.C. § 1404. *See Oklahoma v. Dep't of Interior*, No. 14-cv-123, 2014 WL 4705431 (N.D. Okla. Sept. 22, 2014), ECF No. 87. Undeterred, the Federal Defendants have sought a ruling by the Joint Panel for Multidistrict Litigation transferring that case to Washington D.C. on the theory that the case is related to *In re Endangered Species Act Section 4 Deadline Litig.,* MDL No. 2165 (J.P.M.L.), ECF No. 78. A decision by the Joint Panel for Multidistrict Litigation has yet to issue.

## II. LEGAL STANDARD

A case may be transferred to another venue "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). As the Supreme Court has noted, "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "[T]ransfer in derogation of properly laid venue" in the District of Columbia "must . . . be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute." *Starnes v.*

---

[2] The defendant-intervenors consist of the Oklahoma Independent Petroleum Association, the Oklahoma Oil and Gas Association, the International Association of Geophysical Contractors, the Independent Petroleum Association of America, the American Petroleum Institute, and the Western Energy Alliance. On October 8, 2014, the Court also permitted the National Rural Electric Cooperative Association and the Western Association of Fish and Wildlife to intervene on behalf of the defendant. *See* Minute Order (Oct. 8, 2014).

*McGuire*, 512 F.2d 918, 925 (D.C. Cir. 1974).  In deciding a motion to transfer venue under § 1404(a), a court must first determine whether the transferee district is one where the action "might have been brought," 28 U.S.C. § 1404(a), and then must balance the private and public interests involved in the proposed transfer to determine "whether the defendant has demonstrated that considerations of convenience and the interest of justice support a transfer," *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007).  The burden is on the movant to "establish[] that the transfer of this action is proper." *Hooker v. NASA*, 961 F. Supp. 2d 295, 297 (D.D.C. 2013) (internal quotation marks and citation omitted).

## III. DISCUSSION

Under the general federal venue statute, venue is proper in any judicial district where (1) "a defendant in the action resides;" (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated;" or (3) a "plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).  The Parties do not dispute that this action "might have been brought" in the Northern District of Oklahoma as a substantial part of the events giving rising to this legal action occurred there, including the drafting of the challenged regulations. *See* 79 Fed. Reg. 19,974, 20,070; 79 Fed. Reg. 20074, 20084.  Thus, at issue in this transfer motion is whether the convenience of the parties and the interest of justice support a transfer.

Prior cases have established a list of private and public interests factors for courts to weigh in order to determine whether transfer is appropriate. *See, e.g.*, *Foote v. Chu*, 858 F. Supp. 2d 116, 121–23 (D.D.C. 2012).  Not all of these factors are listed explicitly in the statute but rather they are intended to elucidate the concerns implied by the phrase "in the interest of justice." *See Stewart Org.*, 487 U.S. at 29.  In evaluating "the interest of justice," the Court is

5

mindful of the Supreme Court's statement that analyses of venue transfer under § 1404(a) are to be done on an individualized, case-by-case basis. *See id.*; *see also Stand Up for California v. Dep't of the Interior*, 919 F. Supp. 2d 51, 64 (D.D.C. 2013). The Court will address the private interest factors and then the public interest factors.

A.  **Analysis of Private Interest Factors**

Courts generally look to six private interest factors in evaluating transfer motions: "1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts, and 6) the ease of access to sources of proof." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32–33 (D.D.C. 2008) (citing *Akiachak Native Cmty. v. Dep't of Interior*, 502 F. Supp. 2d 64, 67 (D.D.C. 2007)). In the instant case, the first three factors are largely mixed and the final three factors are effectively neutral because this case will be reviewed on the basis of the administrative record.

Both the plaintiffs and the defendants wish to maintain venue in the District of Columbia and both oppose the defendant-intervenors' motion to transfer.[3] Ordinarily, a plaintiff bringing suit in its home forum is entitled to a "strong presumption in favor of the chosen forum." *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11 (D.D.C. 2007). Nevertheless, a plaintiff's forum is owed less deference where the plaintiff's choice of forum has "'no meaningful ties to the

---

[3] Intervenors may move to transfer venue and courts will grant such motions where appropriate. *See, e.g.*, *S. Utah Wilderness Alliance v. Lewis*, 845 F. Supp. 2d 231, 235 (D.D.C. 2012) (granting intervenors' motion to transfer in part because "acts taken by officials in the [Bureau of Land Management's] Washington, D.C. office do not create a factual nexus between this controversy and the District of Columbia"); *Intrepid Potash-New Mexico, LLC v. Dep't of Interior*, 669 F. Supp. 2d 88, 95 (D.D.C. 2009) (granting intervenor's motion to transfer in part because merely "[n]aming a cabinet secretary or a federal agency does not alone anchor venue here"); *Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 322 (D.D.C. 2007) (granting intervenor's motion to transfer because "this case has little connection with this District other than the fact that the Department of Interior is headquartered here").

controversy and no particular interest in the parties or subject matter.'" *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) (quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995)); *see also Montgomery*, 532 F. Supp. 2d at 33 (noting that although "[c]ourts ordinarily give deference to plaintiffs' choice of forum," where the "plaintiffs are not residents of the forum and 'most of the relevant events occurred elsewhere' this deference is weakened" (quoting *Hunter v. Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C. 2007)). These two principles are at tension "[w]hen plaintiffs bring suit in this district to challenge federal decisions affecting natural resources located in other jurisdictions . . . ." *Oceana, Inc. v. Pritzker*, No. 13-cv-770, 2013 WL 5801755, at *3 (D.D.C. Oct. 28, 2013).

Two of the three plaintiffs in the instant actions maintain their headquarters outside of Washington D.C. The Center for Biological Diversity is headquartered in Tucson, Arizona and Wildearth Guardians is headquartered in Santa Fe, New Mexico. *See* Compl. ¶¶ 15, 17. The third plaintiff, Defenders of Wildlife, does maintain its headquarters in Washington D.C., however. *Id.* ¶ 13. Thus, while a plaintiff bringing suit in its home forum is ordinarily entitled to deference in its choice of forum, any deference owed by the Court in this action is lessened because only one of the three plaintiffs resides in the current forum. Moreover, although it is true that the regulatory body responsible for the regulations challenged in this action—the Department of Interior—is headquartered in Washington D.C., the FWS's Field Office was the principal author of the Challenged Rules. *See* 79 Fed. Reg. 19,974, 20,070; 79 Fed. Reg. 20074, 20,084. Moreover, the "comments and materials received, as well as supporting documentation used in preparing this final rule" were available to the public only in the FWS Field Office, and the Acting Field Supervisor in the FWS Field Office was designated as the point of contact for inquiries concerning the decision. 79 Fed. Reg. 19,974; 79 Fed. Reg. 20074. In similar cases,

7

courts have concluded that "the parties' presence in the District of Columbia is overshadowed by the lack of evidence that federal officials in this forum played an active or significant role in the decision to issue the permits." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67-68 (D.D.C. 2003) (internal quotation marks omitted)); *see also Trout Unlimited v. Dep't of Agric.,* 944 F. Supp. 13, 18 (D.D.C. 1996) (declining to defer to the plaintiffs' choice of forum because the decision-making process occurred in Colorado, not in the District of Columbia); *cf. Greater Yellowstone Coal.,* 180 F. Supp. 2d at 128–29 (deferring to the plaintiffs' choice of forum in part because federal officials in the District of Columbia were involved in the grazing-permit decision at issue).[4] Nonetheless, the regulations are not wholly without connection to this District, as the regulations were signed in Washington D.C. *See* 79 Fed. Reg. 19,974, 20,071; 79 Fed. Reg. 20,074, 20,085.

The deference owed to the plaintiffs' and defendants' choice of forum is somewhat weakened because the claims arose out of agency actions taken primarily in Oklahoma regarding a threatened species, the lesser prairie-chicken, with a range encompassing "southeastern Colorado, western Kansas, eastern New Mexico, *western Oklahoma*, and the Texas Panhandle . . . ." 79 Fed. Reg. 19,974 (emphasis added). By contrast, for example, the court in *Oceana, Inc. v. Pritzker* maintained venue over an Administrative Procedure Act challenge relating to northeastern fisheries in part because "although the regulations' effects would . . . fall most strongly in and around Massachusetts . . . [,] the economic impact would also be felt in mid-Atlantic fisheries close to Washington, not to mention in seafood markets around the country." 2013 WL 5801755, at *4. The connection between the regulation of the lesser prairie-chicken

---

[4] Although the plaintiffs comment that "[m]embers of Congress and governors from the affected states had been very vocal about the listing and its implications," the letters and actions cited were headed by the Oklahoma congressional delegation. *See* Resp. Opp. Mot. Transfer at 11 n.2, ECF No. 26. This reinforces the intense interest in the Challenged Rules in Oklahoma.

8

and the citizens of Washington D.C. is less clear.  Altogether, the first three private interest factors are largely mixed as the plaintiffs' and defendants' choice of forum is slightly undermined by the limited connection between the events at issue and this forum, both in terms of the drafting of the Challenged Rules and the species subject to regulation.

The final three factors—concerning the convenience of the parties and witnesses, and the ease of access to sources of proof—are largely neutral.  This case will be decided on the basis of the administrative record with no witnesses likely to be called.  Although, the existence of an administrative record does not by itself preclude transfer to another district, "the convenience of witnesses and the ease of access to sources of proof, are neutral with respect to transfer" when the case will be decided on the basis of an administrative record.  *Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 56 (D.D.C. 2012); *see also Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 12 (D.D.C. 2007).  To the extent the location of the administrative record is considered, it "should be afforded little weight . . . ." *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004); *see also Flowers*, 276 F. Supp. 2d at 69 ("The location of the administrative record, however, carries some weight in transfer determinations . . . .").  Therefore, "[t]o the extent these factors are relevant, . . . they weigh slightly in favor of transfer to the forum in which the administrative records reside." *Bergmann v. Dep't of Transp.*, 710 F. Supp. 2d 65, 74–75 (D.D.C. 2010).  Thus, the presence of the administrative record in Oklahoma slightly favors transfer to the Northern District of Oklahoma.

In addition, courts recognize that litigating in a particular forum is likely to inconvenience one party or another unless all the parties reside in the chosen district.  *United States ex rel. Westrick v. Second Chance Body Armor, Inc.,* 771 F. Supp. 2d 42, 48 (D.D.C. 2011).  In evaluating the convenience of the parties, courts consider whether "litigating in a

particular forum would cause a party to suffer a hardship, such as from significant expense." *Id.* (citing *Kotan v. Pizza Outlet, Inc.,* 400 F. Supp. 2d 44, 50 (D.D.C. 2005)). The parties have not identified a hardship from litigating in either this District or the Northern District of Oklahoma.

### B. Analysis of Public Interest Factors

While the private interest factors are mixed, the public interest factors strongly favor transferring venue. Courts typically look to three factors in evaluating the public interest: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote v. Chu*, 858 F. Supp. 2d 116, 123 (D.D.C. 2012) (citing *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 56 (D.D.C. 2011)).

Since this is an issue of federal law, the first part of the first factor is effectively neutral; all federal courts should have the requisite familiarity with federal law. *See In re Korean Air Lines Disaster of Sept. 1*, *1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (noting that federal courts "are presumptively competent to decide" issues of federal law) (internal quotation marks omitted). In this case, however, there are related pending actions in the proposed forum. The pendency of previously filed related actions weighs heavily in the Court's analysis and strongly favors transfer.

The well-established rule in the D.C. Circuit is that "[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Wash. Metro. Area Transit Auth. v. Ragonese,* 617 F.2d 828, 830 (D.C. Cir. 1980); *see also Biochem Pharma, Inc. v. Emory Univ.*, 148 F. Supp. 2d 11, 13 (D.D.C. 2001) ("When lawsuits involving the same

10

controversy are filed in more than one jurisdiction, the general rule is that the court that first acquired jurisdiction has priority." (citing *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975))). The so called "first-filed" rule is more of a guide than a rule, however, and a court should balance equitable considerations in making a determination of whether to transfer a case. *See Villa v. Salazar*, 933 F. Supp. 2d 50, 54 (D.D.C. 2013). Specifically, courts may examine whether the first-filed case was part of a "preemptive strike" or filed during good-faith settlement negotiations. Equitable principals do not favor such strategic forum shopping. Courts should also consider the temporal proximity of the filings, the progress of the respective cases, and whether a full, fair, and complete adjudication of the issues may be had before this Court. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co.*, 569 F. Supp. 2d 113, 116 (D.D.C. 2008) (discussing equitable factors). Nevertheless, an over-arching consideration is the "compelling public interest in avoiding duplicative proceedings (and potentially inconsistent judgments)," which weighs heavily in a court's transfer analysis. *See Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 58 (D.D.C. 2000); *see also Barham v. UBS Fin. Servs.,* 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("[T]he most significant factor weighing in favor of transferring [a] case is the presence of closely related litigation."); *Holland v. A.T. Massey Coal,* 360 F. Supp. 2d 72, 77 (D.D.C. 2004) ("[T]he fact that there is an ongoing case dealing with similar issues in another jurisdiction weighs very heavily in favor of a transfer under § 1404(a)." (citing *In re Scott,* 709 F.2d at 721 n.10)); *see also California Farm Bureau Fed'n v. Badgley,* 2005 WL 1532718, *2 (D.D.C. June 29, 2005) ("[A] significant risk that this court and the California court would issue inconsistent orders subjecting [defendant] to inconsistent obligations . . . weigh[s] heavily in favor of transfer.").

As noted, the present litigation contains five separate suits spanning three separate venues all making the same legal challenge to the Listing Decision with some variation among the cases in additional claims asserted. The instant action is the fourth suit filed. The first two cases filed, as well as a third one, are presently before Judge Payne in the Northern District of Oklahoma.[5] *See Oklahoma, et al. v. Dep't of Interior, et al.*, No. 14-cv-00123 (N.D. Okla.) (filed March 17, 2014); *Oklahoma Indep. Petroleum Ass'n, et al. v. Dep't of Interior, et al.*, No. 14-cv-00307 (N.D. Okla.) (filed June 8, 2014); *Hutchison, et al. v. Dep't of Interior, et al.*, No. 14-cv-00509 (N.D. Okla.) (filed Aug. 27, 2014). An additional case is currently before Judge Junell in the Western District of Texas. *See Permian Basin Petroleum Ass'n, et al. v. Dep't of Interior, et al.*, No. 14-cv-0050 (W.D. Tex.) (filed June 9, 2014). On September 22, 2014, Judge Payne denied the Federal Defendants' motion to transfer *Oklahoma v. Department of Interior* to this District.[6] *See Oklahoma*, 2014 WL 4705431.

The first-filed action was in the Northern District of Oklahoma and Judge Payne has now resolved a motion to transfer venue under 28 U.S.C. § 1404(a) and exercised his discretion to retain jurisdiction. Proceeding to the merits in the instant action creates a potential for inconsistent judgments regarding the same legal issues and involving the same parties. The possibility of inconsistent judgments is not "merely 'speculative,'" but real and concrete. *Oceana*, 2013 WL 5801755, at *5; *see also FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 29 (D.D.C. 2008) ("[T]he interest of justice dictates that transfer is appropriate to avoid subjecting a

---

[5] The Oklahoma Independent Petroleum Association, one of the defendant-intervenors in this action, is also the plaintiff in one of the actions before Judge Payne. *Oklahoma Indep. Petroleum Ass'n, et al. v. Dep't of Interior, et al.*, No. 14-cv-00307 (N.D. Okla.) (filed June 8, 2014).

[6] As noted, the Federal Defendants are now asking the Joint Panel on Multidistrict Litigation to transfer *Oklahoma* to this District because the plaintiffs in *Oklahoma* are challenging a consent agreement entered into by FWS and approved by a Judge on this Court. *See In re Endangered Species Act Section 4 Deadline Litigation*, No. 14-mc-123, MDL Docket No. 2165 (D.D.C.). Should the MDL panel grant that motion, and any subsequent similar motions in the other pending actions, this case will then presumably be transferred back to this District. Meanwhile, however, the parties, as well as the Court in the Northern District of Oklahoma, will be able to proceed with coordinating scheduling for the pending cases to ensure the efficient use of the parties' and judicial resources.

defendant to the grave risk of inconsistent judgments deriving from the same conduct."). Although certain of the pending cases concern additional challenges not at issue in this case (*i.e.*, the consent decree) or do not concern legal challenges made in this case (*i.e.*, the Conditions Decision), "the interest of justice factor encompasses the desire to avoid multiple litigation from a single transaction [and] *to try related litigation together . . . .*" *Reiffin*, 104 F. Supp. 2d at 55 (alterations and emphasis in original) (quoting *Vencor Nursing Centers, L.P. v. Shalala*, 63 F. Supp. 2d 1, 6 (D.D.C. 1999)). Indeed, although the plaintiffs in this action challenge both the Listing Decision and the Conditions Decision, unlike the other pending suits, the outcome of the two rules are closely linked because the Conditions Decision is necessarily tied to the listing of the lesser prairie-chicken as threatened. Although neither suit has proceeded beyond the initial stages, Judge Payne's determination to retain jurisdiction over the first-filed suit strongly supports transfer of the current case.

The next factor, concerning the congestion of the docket, is largely neutral. The parties have presented dueling statistics to argue over the relative congestion of the two dockets. Whatever differences may exist between the dockets, they are not sufficient to favor either side. Indeed, Judge Payne reached a similar conclusion finding that the parties had not "demonstrated that the Northern District of Oklahoma's docket is any more congested than the D.C. District Court." *See Oklahoma*, 2014 WL 4705431, at *8.

Finally, Oklahoma has a strong "local interest" in resolving this dispute and that ordinarily favors transfer. Yet, Oklahoma's local interest does not mean that this case lacks a corresponding national interest. Indeed, the lesser prairie-chicken's range spreads beyond Oklahoma and into several neighboring states including Texas, Colorado, New Mexico, and Kansas. Moreover, the Challenged Rules represent national policy and implement Federal law—

13

the Endangered Species Act.  Nevertheless, the D.C. Circuit has admonished that there exists no "blanket rule that 'national policy' cases should be brought [in D.C.]." *Starnes v. McGuire*, 512 F.2d 918, 928 (D.C. Cir. 1974).  Thus, although Oklahoma may have a local interest in adjudicating this dispute, this forum also maintains a national interest over the dispute, which makes the third factor effectively neutral in the present case.

*     *     *

The first challenge to the listing of the lesser prairie-chicken was filed in the Northern District of Oklahoma and that court has exercised its discretion to retain venue.  "Courts in this district have clearly stated[:]  'The interests of justice are better served when a case is transferred to the district where related actions are pending.'" *Reiffin*, 104 F. Supp. 2d at 56 (collecting cases).  After examining all of the public and private factors, the Court concludes that the transfer of this case to the Northern District of Oklahoma best serves the interests of justice.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that transfer to the Northern District of Oklahoma is warranted under 28 U.S.C. § 1404(a).  Accordingly, the motion to transfer venue is granted.  An appropriate Order accompanies this Memorandum Opinion.

Date: November 17, 2014

_____
BERYL A. HOWELL
United States District Judge